576 So.2d 362 (1991)
PALM BEACH COUNTY SCHOOL BOARD, Appellant,
v.
STATE of Florida, UNEMPLOYMENT APPEALS COMMISSION and Shari L. Goodman, Appellees.
No. 90-1098.
District Court of Appeal of Florida, Fourth District.
March 6, 1991.
*363 Hazel L. Lucas, Palm Beach Gardens, for appellant.
John D. Maher, Tallahassee, for appellees.
WARNER, Judge.
This is an administrative appeal from the order of the Unemployment Appeals Commission holding that the claimant was entitled to unemployment benefits. We affirm and write to distinguish our earlier case of Palm Beach County School Bd. v. Unemployment Appeals Comm'n, 504 So.2d 505 (Fla. 4th DCA 1987).
The claimant worked as a computer sales clerk at Champion Computer from December 1988 to May 1989 at which time she was laid off. She applied for unemployment benefits shortly thereafter. At the same time she applied for and was placed on the substitute teacher list with the Palm Beach County School Board. However, she found full-time employment with another employer until the beginning of October 1989 when she was again let go. She made her second application for unemployment benefits at that time. While waiting on benefits and looking for full-time employment, claimant was called on six occasions to work as a substitute teacher. When she was not teaching, she was actively looking for a full-time job.
The Appeals Referee with the Unemployment Compensation Appeals Bureau held that the claimant was not entitled to benefits, relying on Palm Beach County School Bd. v. Unemployment Appeals Comm'n. We find that case to be distinguishable.
In Palm Beach County School Bd. the claimant's sole occupation was as a substitute teacher. Her complaint was that she was not being utilized as frequently by the School Board as she had in previous years. However, according to the terms of her contract, she would be called only on an as needed basis with no guarantee of any amount of teaching time. Furthermore, the substitute teacher retained the right at any time to refuse employment. The claimant in Palm Beach County School Bd. did not seek other employment but simply more substituting assignments. This court stated that "It is ... clear that substitute teachers, such as claimant, are not regularly employed by the school district... ." Id. at 507.
In the instant case the claimant was employed full-time with another employer and lost her job. In fact, after she signed up to substitute teach she found another full-time job which she took and kept until she was laid off in October 1989. She then reapplied for unemployment benefits and notified the School Board of her availability for substitute teaching. All the time that she was accepting substitute teaching assignments she was also actively looking for full-time work. Her substitute teaching was simply a way of trying to make ends meet during a period where the claimant did not have full time employment. There is nothing in the record to suggest that the claimant had settled on substitute teaching as her only occupation as did the claimant in our first Palm Beach County School Bd. case.
Thus the scenario of the present appeal is a full-time worker who was laid off and was engaging in part time work while looking for full-time employment. This claimant is not seeking benefits because the School Board is not using her enough. She is seeking benefits because she lost a full-time job. By applying the holding of Palm Beach School Bd. v. Unemployment Appeals Comm'n without thought of the significant factual distinction in this case, the referee has placed the claimant in a Catch 22 situation. If she accepts a substitute teaching assignment, she is disqualified from receiving benefits because she is employed, albeit on a nonstandard basis. However, if she were to refuse work offered and for which she is qualified, then she would be disqualified for benefits. § 443.101(2), Fla. Stat. (1989). Such a result is repugnant to the whole purpose of the unemployment compensation laws.
In Neese v. Sizzler Family Steak House, 404 So.2d 371 (Fla. 2d DCA 1981), the Second District considered an analogous situation regarding a claimant who had both a *364 full-time job and a part-time job. The claimant received unemployment benefits when she was laid off of her full-time job. However, when she quit her part-time job because she had to move to a different city as a result of her economic circumstances, she was terminated from all unemployment compensation. The court accepted the appellant's contention that where an individual has two or more jobs, the unemployment compensation law (UCL) should be applied on a job by job basis, so that an individual may be qualified to receive benefits from a non-disqualifying termination from one job even though she has another part-time job. The court stated:
Initially, absent a clear legislative expression to the contrary, we do not believe that the UCL should be interpreted in such a manner that it discourages part-time employment. In an economic system where prices have risen faster than salaries for many years, a large segment of our society has found it necessary to accept a second job to provide for themselves and their families. Unfortunately, in many instances, these are the same people whose full-time employment is the least secure. To terminate compensation benefits solely because a person is forced, without cause attributable to his or her employer, to leave a part-time job would be a deterrent to part-time employment.
Another reason the UCL should not be interpreted so as to discourage part-time employment is that a claimant's weekly benefit amount is reduced by his part-time income. § 443.04, Fla. Stat. (1979). [See § 443.111(3)(b) (1989)]. Therefore, a claimant who is receiving total unemployment benefits reduces the compensation fund's liability when he accepts part-time employment. Of course, claimants are less likely to accept part-time employment if they must risk having to quit that job and thereby lose all unemployment compensation benefits.
The public policy underlying the UCL also militates against the appellee's interpretation of section 443.06. The legislature has clearly stated that the purpose of the UCL is to lighten the economic burden on the unemployed worker and his family. § 443.02, Fla. Stat. (1979). [§ 443.021, Fla. Stat. (1989)]. The elimination of benefits solely because a claimant voluntarily accepts a part-time job which he later quits does not further his purpose. Rather, the appellees' approach attempts to punish a worker who is otherwise eligible for benefits because for some reason not attributable to his employer he is unable to continue a part-time job. Moreover, the public policy underlying the UCL demands that section 443.06 be liberally construed in favor of claimants, Fredericks v. Florida Department of Commerce Industrial Relations Commission, 323 So.2d 286 (Fla. 2d DCA 1975).
Neese, 404 So.2d at 372. Certainly, the opposite should also be true. That is, by accepting part-time employment, as claimant must do to continue to qualify for benefits, she cannot by that very act lose the benefits to which she would otherwise be entitled.
In Massey v. Unemployment Appeals Comm'n, 478 So.2d 1140 (Fla. 1st DCA 1985) the First District applied Neese to the opposite situation of the present case. In Massey the claimant, who had been laid off a full-time job, was disqualified by the commission from all further benefits because on one occasion she refused a part-time on-call assignment as a school bus driver. The First District held that the claimant should not have been completely disqualified but only disqualified to the extent that the unemployment benefits would be decreased by the part-time earnings which she had foregone by not accepting the on-call assignment. Surely, if Massey can be penalized for refusing to accept part-time employment, then the claimant in this case cannot also be penalized and disqualified for accepting similar part-time employment.
Nor does our conclusion require us to recede from Palm Beach County School Bd. v. Unemployment Appeals Comm'n. This court held that a substitute school teacher was neither totally or partially unemployed within the meaning of the statute *365 because substitute teachers are not "regularly employed" by the school district within the statutory definitions. Florida Administrative Code Section 38B-2.011(1)(b) defines "part-total unemployment" as:
unemployment of any individual in any week of less than full-time work in which he earns some remuneration, but less than his weekly benefit amount, and throughout which he is not attached to a regular employer.
Since our previous case has established that the school district does not "regularly employ" substitute teachers as defined in the statutes and codes, then the claimant herein who has received some remuneration from her substitute teaching while looking for full-time work has not been attached to a "regular employer" and is thus entitled to unemployment benefits under the statute, reduced of course by any income earned in substitute teaching. See § 443.111(3)(b) (1989). Any other result would only serve to discourage an unemployed individual from seeking what work he or she can find while seeking more permanent full time employment, to the detriment both of the individual and at greater cost to the unemployment compensation fund.
AFFIRMED.
HERSEY, C.J., and STONE, J., concur.