PER CURIAM.
Gulfview Animal Hospital (Gulfview) appeals an order from the Unemployment Appeals Commission (UAC) that reverses the appeals referee’s decision and awards unemployment benefits to Patricia A. Zemke (the claimant). We find that the appeals referee’s findings were supported by substantial, competent evidence, and thus, we reverse the UAC’s order.
The claimant worked for Gulfview from February 1993 through June 1997, as a part-time veterinary technician. Due to business reasons, Gulfview placed the claimant and its other employees on split shift schedules which lead to a reduction in certain employees’ weekly hours. On the claimant’s last day of work, she advised her manager that she had contacted the Wage and Hour Division of the United *1164 States Department of Labor concerning lost wages, and that she planned to file a claim for lost wages. The claimant also indicated that she was sick on that day and did not know how much longer she could work. The claimant was scheduled to work from 7:30 a.m. until 12:00 p.m., and again from 3:00 p.m. until 6:30 p.m. After her conversation with the claimant, the manager called the Wage and Hour Division to obtain information about the applicable laws concerning lost wages. The manager was informed that if employees voluntarily leave early, the employer should have them sign a form to that effect.
Shortly after 12:00 p.m., the manager asked the claimant what her intentions were in regard to working the rest of the day. The manager told the claimant that if she needed to leave because of illness, she should leave, but that she needed to sign a form as instructed by the Wage and Hour Division. The claimant took the form. Later, the manager asked the claimant if she had signed the form. The manager testified that the claimant then became angry and said that she was not going to sign the form. At that point, the manager asked the business owner to observe the discussion. The claimant stated that she was not going to work split shifts. The claimant threw the form on the counter and stated, “I’m not signing that crap. I’m outta here.”
The manager then asked the claimant for her key to the building. Gulfview maintains controlled substances on the premises, and the manager and the business owner testified that they felt they should maintain the claimant’s key due to the claimant’s agitation. The claimant asked the manager if she was being fired, and the manager stated, “No.” The claimant then began walking down the hallway, and the business owner instructed the manager to retrieve the key from the claimant. The manager went after the claimant and again asked her for the key. The claimant again asked if she was being fired, and the manager again said, “No.” The manager testified that the claimant then stated that the only way for the manager to get the key was to fire her. The business owner told the manager that they needed the key, and if that meant firing the claimant, then they would have to fire her. The manager went outside and approached the claimant. The claimant asked if she was being fired, and the manager said that she was if that was the only way to obtain the key. The claimant responded, “Fine” and gave the manager the key.
The appeals referee denied unemployment compensation benefits and concluded that the employer discharged the claimant for misconduct connected with her employment, specifically her refusal to return the building key. On appeal, the UAC reversed the appeals referee’s denial of benefits, concluding that the claimant’s decision to leave her employment was with good cause attributable to her employer. Additionally, the UAC concluded that the claimant’s disapproval of the split shift schedule and her statement that she was “outta here” showed that she voluntarily left her employment as opposed to being discharged.
Whether the claimant voluntarily left her employment or was discharged is a question of fact. See Poppe v. Eclectic Business Machines, Inc., 661 So.2d 65, 67 (Fla. 2d DCA 1995); Verner v. Unemployment Appeals Com’n, 474 So.2d 909 (Fla. 2d DCA 1985) (“[(Questions of whether an unemployment benefits claimant left voluntarily are essentially questions of fact.”). Thus, the UAC could only reverse the appeals referee’s determination that claimant had been discharged if the appeals referee’s determination was not supported by substantial, competent evidence.
We conclude that there was substantial, competent evidence to support the appeals referee’s conclusion that claimant was discharged from her employment. Both of Gulfview’s witnesses testified that the claimant was fired after she refused to return the building key. While another appeals referee might have agreed with the conclusion reached by the UAC, there was substantial, competent evidence to support this appeals referee’s determination.
*1165 In the present case, the UAC failed to consider the main issue on appeal, i.e., whether the claimant was discharged due to misconduct connected to her employment. Whether the actions of the claimant amount to misconduct involves mixed issues of fact and law, over which the UAC exercises some discretion. See Poppe, 661 So.2d at 67-68. Given the circumstances of the claimant’s discharge, we are not convinced that we should order the UAC, as a matter of law, to accept the referee’s conclusion of law on this issue. Thus, we express no opinion as to whether the conduct in this case amounted to misconduct. We remand with directions for the UAC to review the appeals referee’s determination that the claimant’s actions amounted to misconduct connected with her employment. See Poppe, 661 So.2d at 67-68 (Fla. 2d DCA 1995) (remanding case where UAC failed to consider the central issue on appeal).
Reversed and remanded for further proceedings.
THREADGILL, A.C.J., and GREEN and STRINGER, JJ., Concur.